**In re David Carl RHEA, Bankrupt,**

**Ray K. BABB, Jr., Trustee, Plaintiff,**

**v.**

**STATE of Oklahoma ex rel. OKLAHOMA TAX COMMISSION, Defendant.**

**Bankruptcy No. Bk-79-290.**

United States Bankruptcy Court,
W. D. Oklahoma.

Feb. 22, 1982.

Ray K. Babb, Jr., pro se.

Joe Mark Elkouri, Asst. Gen. Counsel, Oklahoma City, Okl., *for the Okl. Tax Commission.*

## MEMORANDUM OPINION

DAVID KLINE, Bankruptcy Judge.

### PRELIMINARY STATEMENT

On February 27, 1970 in the case of In re Gene Adams Funeral Service, Inc., Bk–69–251 [unreported but summarized in CCH, Bk.L.Rep.No.162, p. 33, ¶ 63,455 (W.D.Okl. 1970)], this court entered a Memorandum Order denying the application of the State of Oklahoma, ex rel. Oklahoma Tax Commission, requesting the court to direct the bankruptcy trustee to pay allegedly incurred sales tax liability. In essence, the court then ruled that a state sales tax, or its practical equivalent, is inapplicable to a federal court liquidation sale as it is burdensome on the federal court's process, and on the functions of the court's duly appointed officer. This order was unappealed from and has been the rule and practice in this district up to the present Oklahoma Tax Commission request and claim.

### ISSUE

Is a federal court bankruptcy trustee obligated to pay an Oklahoma sales tax which the state asserts the trustee should have collected from purchasers at varied bankruptcy liquidation sales?

### FACTS

On February 20, 1979, the bankrupt filed his bankruptcy petition and on March 13, 1979, Ray K. Babb, Jr. was appointed trustee. Over a period of several months the trustee sold bankruptcy estate assets at various sales, all of which were confirmed by this court.

In December 1979, the Oklahoma Tax Commission performed a field audit of the books and records of a company not a party to this action. These records indicated a purchase of certain personalty from the instant trustee. Resultantly, an assessment was then made by the Tax Commission against the trustee based upon Attorney General Opinion 77–107, dated March 21, 1977, indicating that *political* subdivisions were not exempt from collecting and remitting sales tax on sales made by such political subdivisions. By a letter dated December 19, 1979, the Tax Commission demanded payment of $2,408.10 in taxes, interest and penalty for the period July 1, 1979 through November 30, 1980; and stated that a tax warrant would be issued against the trustee's personal property.

The trustee filed a complaint against the Tax Commission, stating that the attempted assessment was unlawful and obtained a temporary restraining order against the Oklahoma Tax Commission. The defendant Tax Commission answered and requested that the temporary restraining order be rescinded. The Tax Commission's request was denied but it was directed to file a claim within normal court procedures. The defendant then filed its proof of claim for $2,408.10 to which the trustee objected. After a hearing, the matter was taken under advisement with briefs invited.

## LAW

### LOCAL LAW

The term "person", under the Oklahoma sales tax code includes any ... "receiver, or trustee appointed by any State or Federal Court or otherwise ...." 68 Okla.Stat. (1971) § 1302(a). "The term 'established business' means any business operated or conducted by any person in a continuous manner for any length of time from an established place." 68 Okla.Stat. (1971) § 1302(f). And the "term 'gross receipts' or 'gross proceeds' means the total amount of consideration for the sale of tangible personal property ..." [§ 1302(d)] on which there is levied "an excise tax of two percent (2%) ..." 68 Okla.Stat. (1971) § 1304.

Moreover, the Oklahoma Statute places a duty upon the vendor to collect "from the consumer or user, the full amount of the tax levied by this article, or an amount equivalent as nearly as possible or practicable to the average equivalent thereof". 68 Okla.Stat. (1979 Suppl.) § 1310. A failure by the vendor to so comply constitutes a misdeameanor [§ 1310(c)].

### FEDERAL

Under 28 U.S.C. § 959: "(a) Trustees ... may be sued ... with respect to any of their acts or transactions in carrying on business connected with such property ..." and "(b) A trustee ... appointed in any cause pending in any court of the United States ... shall manage and operate the property in his possession as such trustee ... according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof." The former section 125 of Title 28 (now covered by Sec. 959) applied to receivers (or trustees) in bankruptcy, but only authorized a suit against such a receiver where the business of the bankrupt was being carried on or in respect to acts, relating to the care and preservation of the estate's property. *In re Kalb Berger Manufacturing Company*, 165 Fed. 895 (CA 2 1908); *In re Roberts*, 169 Fed. 1022 (CA 2 1909). Specifically "any officers and agents conducting any business under authority of a United States Court shall be subject to all Federal, State and Local taxes applicable to such business to the same extent as if it were conducted by an individual or corporation." 28 U.S.C. § 960. Sensibly, this precludes a trustee "from operating tax free business in competition with tax burdened operators ..." *In re New York, New Haven and Hartford Railroad Co.*, 360 F.Supp. 1155, 1158 (DC Conn.1973. Accord, *Boteler v. Ingels*, 308 U.S. 57, 60 S.Ct. 29, 84 L.Ed. 78 (1939). Read *In Re Samuel Chapman, Inc.*, 394 F.2d 340 (CA 2 1968), *cert. den.* 393 U.S. 923, 89 S.Ct. 253, 21 L.Ed.2d 258 recognizing internal revenue tax liability of a debtor-in-possession.

## Significant Decisions

There is early, respected authority that a bankruptcy trustee can be required to collect tax from the vendee in an auction sale of the bankrupt's stock and fixtures, and the imposition of a state originated city sales tax was found constitutionally acceptable. *In re Leavy*, 85 F.2d 25 (CA 2 1936). The theory asserted by the trustee in *Leavy* in resisting the state action is reflected in the court's opinion at page 27: "... what the trustee is really complaining of is, not that a burden has been imposed upon the exercise of his functions, but of his inability to sell to a purchaser who would be exempt from a tax and because of such an exemption would pay a higher price to him than would ordinarily be paid for the goods sold. It seems unreasonable to treat the absence of an exemption from taxes as a burden upon the normal exercise of a governmental function." Accord *In re Hatfield Construction Company*, 494 F.2d 1179 (CA 5 1974); *Debtor Reorganizers, Inc. v. State Board of Equalization*, 58 Cal.App.3d 691, 130 Cal. Rptr. 64 (Ct.App.1976). Interestingly, Augustus N. Hand in *Leavy*, supra, did observe at page 27:

"A tax on a sale made by a trustee under an order of court for purposes of liquidation if payable directly and primarily by him would doubtless be a burden on a governmental instrumentality, for a judicial sale in liquidation of a bankrupt estate would in a peculiar sense involve the exercise of a federal function. Indeed, without the exercise of such a function and the power thus to dispose of assets, administration in bankruptcy would hardly be practicable."

Later, analytical decisions emphasize the line of demarcation between a trustee's liability for state taxes in the "conduct of business" as contrasted with "acts in liquidation". *California State Board of Equalization v. Goggin*, 191 F.2d 726 (CA 9 1951); *California State Board of Equalization v. Goggin*, 245 F.2d 44 (CA 9 1957); *State Board of Equalization v. Boteler*, 131 F.2d 386 (CA 9 1942).

In *Goggin* I, supra, at page 730, the court observed: "... More tenable is the construction that the California tax ... is geared to the Federal Statutes, which is general in nature, making officers appointed by the United States Court liable for State taxes if they 'conduct any business'. A harmonious application of the Federal and State laws here involved leads us to the conclusion that in making sale of the assets of the bankrupt's estate pursuant to court order for the purpose of liquidation, the trustee was not subject to the California sales tax. (citing authority)" And as mentioned on the same page, in Judge Fee's concurring opinion:

"... the Referee ordered a liquidating sale of certain trucks. A tax on this transaction, whatever form it takes, is a tax on the process of the court liquidating assets in accordance with Constitutional power. In another aspect, it may be considered as a license fee required of a federal officer to make liquidation. In either event, it is void. A tax may be levied upon specific property in the hands of a trustee in bankruptcy. (citing authority) But no state is empowered to levy taxes upon the process of the Courts of the United States or to impede the officers of Court in an essential Judicial function. (citing authority) ... Under such conditions, neither enactments of the State of California nor decisions of State Courts nor practices of state administrative bodies can burden or impede administration of acts relating to bankruptcies. (citing authority) ..."

In *Goggin* II, supra, the Court of Appeals held that the State Board of Equalization could not collect from a trustee in bankruptcy, or from a purchaser from him, any tax or debt based on a sale of debtor's tangible personal property sold in liquidation of the estate and underscored its prior holding by stating at page 45 that: "Essentially, as applied to a liquidation sale in bankruptcy, this tax constitutes a burden on the process of liquidation. Whether the phrasing of the law imposes a liability directly upon the trustee to pay a sales tax or if directly places the burden upon the trus-

tee by naming the imposition of a use tax, which the purchaser at a liquidating sale must pay, the net effect is identical .... In practice, if the sales tax were levied upon the trustee, he would necessarily have passed the tax on to the purchaser. The same result is attained by taxing the purchaser and requiring the trustee to collect or collecting the impost from the purchaser. All these devices are proscribed as to liquidating sale in bankruptcy." The court continued at page 46:

"Whatever the protean forms of a statute may be or whatever subtle ingenuity of legislative tax advisors may suggest now or in the future the tax is in fact based upon the sale; the sale is for the essential purpose of liquidating; the liquidating process was burdened thereby. The paramount authority in the bankruptcy field can be limited only by Congress. But, since Congress has already designated its sales in the course of operation of a business as the sole area where the state is permitted to impose a tax or any type, essential sales in liquidation are inevitably free from such imposition .... The power of Congress to pass uniform laws in relation to bankruptcy is paramount and supreme under the Federal constitution. *The Federal Courts empowered by such legislation in bankruptcy, have never attempted arbitrarily to set off property in possession of their officers as sacrosanct and thus immunized from state taxation. Permission to levy general taxes upon property in possession of trustees in bankruptcy has never been denied. Congress passed a specific statute relative to a trustee engaging in business in order to conform to the burdens borne by other members of particular business communities ....*" (Emphasis added)

"And the distinction between sales, 'in the course of business' and 'in liquidation' is real and patent." *Goggin II,* supra, at page 48. *Accord, In re Supergate Open Steel Flooring Co.,* 1 B.R. 660 (Bkrtcy. CD CALIF 1979).

## CONCLUSION

Although a federal court bankruptcy trustee must comply with the requirements of the valid laws of the state in which such property is situated, in the same manner that the owner or the possessor thereof would be bound to do if in possession thereof including being subject to all Federal, State and Local taxes applicable to such business to the same extent as if it were conducted by an individual or corporation, the trustee is not obligated to collect a sales tax from his vendee in a court directed liquidation sale. A state sales tax, or its practical equivalent, is inapplicable to a federal court liquidation sale as it is burdensome on the federal court's process and on the functions of the court's duly appointed officer. Read *York International Building, Inc. v. Chaney,* 527 F.2d 1061 (CA 9 1975) which emphasizes that those administering a bankrupt's estate act not as private persons but as court officers. The burden's practical impact was dramatized where as in *In re Gene Adams Funeral Service, Inc.,* supra, the trustee had sold real estate and tangible personal property in bulk under a single appraisal and he had no feasible way to determine the "gross proceeds" received from the tangible personal property. Interestingly, the sale of both real and personal property (oil and gas leasehold estate and oil well equipment) for a lump sum with the majority of gross proceeds attributable to real property, does not preclude sales tax liability on the tangible personal property: *Magnolia Petroleum Company v. Oklahoma Tax Commission,* 326 P.2d 821 (Okl.1958).

The trustee herein did not in fact collect sales taxes from the purchasers and cannot now be looked to for such payments. Fairly, his duties did not, and do not include wrestling with this particular tax-collecting responsibility. An order which conforms with this opinion is filed herewith.

## ORDER AND JUDGMENT

### PRELIMINARY STATEMENT

On February 20, 1979, the bankrupt filed his bankruptcy petition and on March 13, 1979, Ray K. Babb, Jr. was appointed trus-

tee. Over a period of several months the trustee sold bankruptcy estate assets at various sales, all of which were confirmed by this court.

In December 1979, the Oklahoma Tax Commission performed a field audit of the books and records of a company not a party to this action. These records indicated a purchase of certain personalty from the instant trustee. Resultantly, an assessment was then made by the Tax Commission against the trustee based upon Attorney General Opinion 77–107, dated March 21, 1977, indicating that *political* subdivisions were not exempt from collecting and remitting sales tax on sales made by such political subdivisions. By a letter dated December 19, 1979, the Tax Commission demanded payment of $2,408.10 in taxes, interest and penalty for the period July 1, 1979 through November 30, 1980; and stated that a tax warrant would be issued against the trustee's personal property.

The trustee filed a complaint against the Tax Commission, stating that the attempted assessment was unlawful and obtained a temporary restraining order against the Oklahoma Tax Commission. The defendant Tax Commission answered and requested that the temporary restraining order be rescinded. The Tax Commission's request was denied but it was directed to file a claim within normal court procedures. The defendant then filed its proof of claim for $2,408.10 to which the trustee objected. After a hearing, the matter was taken under advisement with briefs invited.

The court has concluded (for reasons set forth in the accompanying Opinion) that:

1) Neither the trustee personally nor the estate herein is liable for state assessed sales taxes, uncollected from purchasers of estate personal property at bankruptcy approved liquidation sales; and 2) The imposition of a sales tax or use tax upon liquidation sales of a trustee in bankruptcy is an undue burden upon the federal bankruptcy court's process. Accordingly, it is

ORDERED and ADJUDGED that the claim of the Oklahoma Tax Commission be DENIED.