In re OILFIELD
INSTRUMENTS, Debtor.

W. Simmons SANDOZ,
Trustee, Plaintiff,

v.

STATE OF LOUISIANA DEPARTMENT
OF REVENUE AND TAXATION,
Defendant.

Bankruptcy No. 483–01088–LO–7.
Adv. No. 484–0174.

United States Bankruptcy Court,
W.D. Louisiana.

July 23, 1985.

Trudy M. White, Baton Rouge, La., for State of La.

W. Simmons Sandoz, Opelousas, La., Trustee.

### Findings and Conclusions

RODNEY BERNARD, Jr., Bankruptcy Judge.

### Facts

The facts of this case are not in dispute; they have been concisely and accurately set out in the brief submitted by the state, which is borrowed verbatim below for the purpose of introduction:

"On or about July 9, 1984 an authorized representative of the Louisiana Department of Revenue and Taxation, (Department; Department of Revenue), informed the Trustee, W. Simmons Sandoz, that sales tax is due and owing on the liquidation sale of a bankrupt debtor's property at a public auction.

On July 25, 1984 the public auction of the debtor's property was held and the gross sale of the items of tangible personal property amounted to $5,677.50. The Trustee collected $227.10 in sales tax and is holding said monies in trust until a ruling is issued by this court.

On July 17, 1984, the Trustee filed a complaint for declaratory judgment, seeking a determination from this Honorable Court as to the taxability of movables at a liquidation sale that is conducted by an auctioneer."

As the result of a status conference held between counsel for the respective parties and this court on September 26, 1984, it was decided that in view of the agreement as to the facts, the matter would be submitted on written memoranda. Now having received and considered the written arguments of counsel the following shall constitute the findings and conclusions of this court:

### Issues

As this court appreciates them, the relevant legal questions presented by this controversy are as follows:

1. Are auction sales conducted by or on behalf of a trustee in bankruptcy for the purpose of liquidating a bankruptcy estate fairly within the scope and language of the Louisiana sales tax law, L.S.A. *R.S. 47:301* et seq.?

2. Do such sales fall within any applicable exemption provision of the Louisiana law, as a matter of Louisiana law?

3. Are such sales exempt from taxation as a matter of federal bankruptcy law?

4. Are there any other considerations of federal interest or U.S. constitutional law which would prohibit state taxation under the instant facts?

In the mind of the court, the tradition of judicial restraint dictates that a federal court in treating such mixed questions of state and federal law follow an analytical sequence as suggested above. Certainly if the described sales are not taxed or are exempt as a matter of state law there would be no need for this court to turn to the federal law or constitution for a solution of the present controversy. But mindful of that imperative, nevertheless, some of the questions posed above are far more easily answered and so disposed of than are others; therefore for ease of presentation the sequence in which they are addressed here will be altered.

### I.

### Bankruptcy Law Exemption?

The easiest question to dispose of is number three, above, regarding a possible exemption from taxation as a matter of federal bankruptcy law. As the trustee correctly points out several other courts have acknowledged such an exemption and as a matter of fact there now appears to be a split among the federal circuits regarding this very question. The cases finding in favor of the existence of the exemption have generally done so on either or both of

two basis:[1] one, by implication of the provisions of *28 U.S.C. § 960*, which essentially allows a state to tax sales "in the ordinary course" transacted by the trustee in his operation of the debtor's business. The cases finding in favor of the exemption perceive from this an implied congressional intent to exempt sales not made "in the ordinary course" e.g. liquidation sales. Secondly, and reaching back for authority to the venerable *McCulloch v. Maryland* 17 U.S. (4 wheat) 316, 4 L.Ed. 579 (1819), some cases have concluded that a state's attempt to tax the trustee, except as specifically allowed by Congress (e.g. via § 960 supra), constitutes an interference with the federal bankruptcy process. These courts determined that this is an impermissible burden on that process. *In re Rhea* 17 B.R. 789 (Bkrtcy.Okla.1982); *California State Board of Equalization v. Goggin*, 245 F.2d 44 (CA. 9 1957). Indeed, as the court's own research reveals, this appears to have been a once widely held view under the former act as evidenced by certain observations and comments found in the notable bankruptcy authority Collier, 4 B *Collier on Bankruptcy* ¶ 70.97[4] (14th Ed.) (now superceded).

Regardless of how widely held the above view may once have been or of what arguments may still be mustered in its support the question in this circuit, has now been authoritatively resolved. The Fifth Circuit Court of Appeals in the case of *In re Hatfield Construction Company* 494 F.2d 1179 (CA. 5 Georgia 1974), has now flatly rejected the above view. The *Hatfield* court found in no uncertain terms that: first, *28 U.S.C. § 960* does not and cannot by implication create an exemption from state taxation and if this had been the congressional intent, Congress was certainly free to and would have done so directly. Secondly, the *incidence of taxation* under Georgia's similar sales tax law falls upon the *purchaser* and *not* upon the *trustee; accordingly it does not constitute an impermissible burden of taxation* on the federal bankruptcy process, *Hatfield* (supra).

This court is bound by the Fifth Circuit's holding in *Hatfield* and thus finds that no exemption may be claimed by the trustee on the sole basis of federal bankruptcy law, under the instant facts.

The Department of Revenue would have the court end the inquiry here and based upon its own unsupported view of the similarity alleged to exist between Georgia's and Louisiana's sales tax laws respectively, find that it should be permitted to tax the sale sub judice. This court, however, finds nothing in its reading of *Hatfield* which would warrant such a sweeping pronouncement. That case simply holds that nothing in the federal law excuses or exempts a trustee in bankruptcy, by mere virtue of his office, from the duties or obligations imposed by an otherwise *valid, applicable* and *constitutional*, state sales tax provision.

Clearly, whether the laws in question are otherwise valid, applicable and constitutional are questions which may not be answered by a superficial analogy to a case construing another state's law. *Hatfield*, did not, and naturally could not, have addressed such questions as they relate to the Louisiana laws here under consideration. Questions relating to the applicability, scope and/or exemptions created by Louisiana law can only be answered by a direct examination of the applicable provisions of that state's laws. Further, the *Hatfield* case did not touch upon many other relevant matters of legitimate federal/U.S. constitutional concerns which I find at least implicit in the facts of the present controversy and which will be examined in due course. But for the present, our search must start with a direct examination of the applicable Louisiana law, viewed as a whole, and in light of its traditional application and interpretation as evidenced by the relevant Louisiana authorities.

*Louisiana Law Considered:*

Perhaps the next easiest question to dispose of is number two above. This deals

1. See: Collection and discussion of these cases

*In Re Rhea* 17 B.R. 789 (Bkrtcy.Okla.1982).

with an inquiry regarding the possibility of an exemption, for transactions such as the one being considered, based solely upon the Louisiana exemption provisions.

As stated previously the state relies for its power to tax this transaction on Louisiana's general sales tax provisions found at L.S.A. *R.S. 47:301* et seq.[2] A look at these provisions indicates that they may be conviently broken down into three or perhaps four general groupings. The first of these consists of only one, although one rather lengthy, section which establishes the definition of terms to be used in the sections that follow. *R.S. 47:301.*[3] The next group, also consisting of one section sets out the actual imposition of the tax. *R.S. 47:302.*[4] The third group and the one of most interest here, deals with exemptions and exclusions. The fourth group deals mainly with administrative and implementation matters that need not concern us here.

Regarding group three (3) dealing with exemptions and exclusions, nowhere do they contain nor does the trustee suggest that they contain any specific provisions relative to bankruptcy liquidation sales. The trustee however, has suggested that an analogy may be drawn from the fact that, as a matter of practice, the Louisiana Department of Revenue does not impose a sales tax on sheriff's sales. Citing L.S.A. R.S. 37:3104, the trustee then goes on to indicate that, like sheriffs, bankruptcy trustees are exempted from the auctioneer licensing requirements.[5] He then concludes

that when these provisions are read together they indicate a legislative intent to exempt bankruptcy liquidation sales from the Louisiana sales tax provisions.

■ I cannot agree with the trustee's analysis regarding the creation of an exemption by the process of judicial or legal analogy. As the Department correctly points out, it has long been the rule of statutory construction, in Louisiana as elsewhere, that exemptions are to be strictly construed against the party claiming the exemption. See generally: *68 Am.Jur.2d* §§ 11, 100; *Vulcan Foundry, Inc. v. Shirley McNamara*, 414 So.2d 1193 (La.1982); *Traigle v. PPB Industries, Inc.*, 332 So.2d 777 (La.1976); *Roberts v. City of Baton Rouge*, 236 La. 521, 108 So.2d 111 (La. 1958). Under such circumstances, extension by analogy is certainly not proper. Accordingly and specifically, I find that Louisiana law does not provide for an exemption to its sales tax provisions with regard to bankruptcy, (trustee's), liquidation sales. As we shall soon discover, however, the trustee's analogy to sheriff's sales is not completely without meaning or consequence, for in order for the question of exemptions even to arise there must first be an otherwise taxable event.

### Taxable Events in Louisiana

"When I use a word," Humpty Dumpty said, in a rather scornful tone, "it means

---

2. See: Appendix infra.

3. Id.

4. Id.

5. Louisiana has established a scheme for the mandatory licensure of auctioneers. This is now covered by LSA *R.S. 37:3101* et seq. since being amended in 1983. Formerly the scheme was imposed by LSA *R.S. 5:1* et seq. The older version allowed a dispensation from the requirement only to judicial officers of the U.S. or of the State of Louisiana. A newer exception provision now contained in *R.S. 37:3104* grants a dispensation to various other classes of individuals in addition to the traditional "judicial officer" exception, (see provisions set out in Appendix infra).

The importance of the fact that the state has always seen fit to grant a dispensation to "judicial officers", it is felt, is in no way diluted by the addition of other classes to the exception, at least for present purposes. Remembering that I do not attempt here to construe these licensure provisions directly but only as they relate to the possible meaning of the otherwise ambiguious "isolated sales" provisions of the sales tax law— the equality of treatment afforded to judicial officers of both the state and federal system by the Louisiana Legislature in other areas of its law should not be overlooked. Nor can the exception to the license requirement be viewed as an insignificant policy choice. This is borne out by the fact that sanctions for violations of the requirement include injunctive relief, heavy fines and/or possible imprisonment. (see Appendix).

just what I choose it to mean—neither more nor less."

"The question is," said Alice, "whether you can make words mean so many different things."

"The question is," said Humpty Dumpty, "which is to be master—that's all."

[Lewis Carroll: *Through the Looking Glass VII*]

Question number one (1) above deals with the meaning and scope of the Louisiana sales tax provisions. In essence, the argument advanced by the Department of Revenue in this regard is as follows: (1) the tax is imposed on all "sales at retail" or "retail sales", *R.S. 47:302;*[6] (2) a "retail sale" is defined as a sale to a consumer or any other person other than for resale. Thus the trustee's liquidation sale is, saving other circumstances, a "retail sale" and is therefore a taxable event, *R.S. 47:301(10);*[7] (3) a "dealer" is someone who sells at retail and the term "dealer" specifically includes the term "auctioneer", *R.S. 47:301(4)(b), 47:303(C);*[8] (4) Dealers (i.e. including auctioneers) are required to collect and remit the tax to the proper taxing authority or collector *R.S. 47:303(C), 47:304(A).*[9] Accordingly the Department asserts that, barring the existence of a specific exemption, the trustee or the auctioneer/agent conducting a liquidation auction on his behalf is required by the above provisions to collect and remit state sales tax on the items sold at auction.

This is all well and good but the Department who's brief on this matter makes extensive use of direct, verbatim quotation from the statutory provisions, just cited, nevertheless curiously neglects to refer to what is perhaps the most telling provision of all under the instant facts.[10] Specifically, the section of the law which defines "retail sale" and which provides the linchpin for the Department's argument goes on to state in its concluding paragraph, (the portion the Department did not quote), as follows:

. . . .

The term "sale at retail" does not include sales of materials for further processing into articles of tangible personal property for sale at retail, *nor does it include an isolated or occasional sale of tangible property by a person not engaged in such business.* Amended by Acts 1978, No. 756, § 1.

L.S.A. *R.S. 47:301(10)* [Emphasis added]

It will be noted that the "isolated or occasional sale" provision set out above is found, not in that portion of the Louisiana law dealing with exemptions (discussed supra), but rather forms a part of the very definition of what constitutes the taxable event—i.e. what constitutes a "sale at retail" or "retail sale", *McNamara v. U.O.P., Inc.,* 389 So.2d 741, 747 (La.App. 2d Cir. 1980); *68 Am.Jur.*2d §§ 11, 47, 100; at pp. 26, 80, 146–147. Accordingly, this term which has often been loosely referred to as an "exemption" appears upon closer inspection not to be an "exemption" at all but is instead a direct definitional limitation placed upon the otherwise all encompassing definition of "retail sale", "sales at retail". Thus the rule regarding strict construction of exemption provisions, earlier discussed and upon which the Department now so heavily relies, is here inappropriate. To the contrary, both logic and certain other rules of construction dictate an opposite finding. Certainly, citizens are entitled to know in advance exactly what items or transactions the state has decided to tax. The interpretations of the state agency charged with administering such law are, it is true, entitled to great weight, but unlike Humpty Dumpty; the agency is not entirely free to resort to arbitrary caprice in doing so. Although tax statutes are entitled to a "reasonable" as opposed to a

---

6. See: Appendix.

7. Id.

8. Id.

9. Id.

10. Attorneys are reminded of their duty to disclose adverse authority to the court, L.S.B.A. *Code of Professional Responsibility,* E.C. 7–23; D.R. 106(B)(1).

"narrow" construction this does not remove the requirement that such interpretations be firmly grounded upon the statutory language. See: *68 Am.Jur.2d § 10* and authorities cited thereunder. It is for these reasons that the rule regarding "strict construction of exemptions", previously discussed, has developed only as an exception to the more general rule that all ambiguity contained in a tax statute is to be construed in favor of the taxpayer. *Peters v. Cooper* 90 So.2d 892 (La.App. 1st Cir.1956) commenting on the distinction at p. 896; *68 Am.Jur.*2d §§ 10, 11 and authorities cited thereunder.

Digressing for a moment, it should be pointed out here that the *Hatfield* court touched upon this issue in a footnote to the opinion which makes reference to an apparently similar "isolated" or "casual sales" provision found in Georgia's law.

> It is to be noted that sales in liquidation are exempt under these regulations under certain conditions. The trustee here did not comply with these conditions. *Hatfield* id. p. 1180 n. 1.

Unfortunately, the court did not go on to indicate what those "conditions" were and therefore the note is of little assistance in the instant case. Suffice it to say that I know of no such "condition(s)" applicable to or required by the Louisiana "isolated sales" provision and accordingly, once again, *Hatfield* would appear to be clearly distinguishable.

Now returning to the Louisiana taxing provision, what is at once apparent from even a cusory review of the cases, is the striking lack of judicial gloss which has been given to the phrase "isolated or occasional sale" found in Section 301(10). In fact, the only authoritative interpretation to be found in the annotations to Section 301 in a situation anywhere closely analogus to the instant one, comes not from the Louisiana courts at all but from a now dated attorney general's opinion. In response to an inquiry from the sheriff and ex-officio tax collector of Winnsboro, Louisiana, regarding the taxability of sales of personal property sold by a sheriff in his official capacity, the then Louisiana attorney general opined that such sales were "occasional and isolated" sales and therefore not taxable. *Op.Atty.Gen. 1938–40*, p. 1128–29, per Gaston L. Porterie Atty.Gen. From what my own research has been able to unearth, it is ironic that until now the Department of Revenue's own expressed interpretation of these provisions has not only been consistant with that of attorney general Porterie, but has gone on to specifically include trustee liquidation into this category.[11] In a handbook entitled, *Sales Tax Law and Regulations*, published by the Department in 1973 and again in 1979, it is stated in the comments relating to *Section 47:301(1)* that a *trustee liquidation* sale as opposed to carrying on the debtors' business *does **not** fall within the statutory definition of **business***. Then going on to elaborate in the comments made therein relative to *Section 301(10)* of the tax law, the Department's handbook states:

> "The primary consideration in determining whether a sale meets exemption requirements is whether the seller is in the *business or holds himself out to be in the business* of selling merchandise or tangible personal property of similar nature, *and not solely upon the frequency of the transaction.*

> .    .    .    .    .

> The *periodic sale of articles by auction* to recover storage, repair, or labor liens unpaid by the owner of the property are *exempt, provided the person forcing the sale does not hold himself out to be in the business* of selling such merchandise." (Emphasis Added)

This is not to suggest that the Department may not change its mind or is in anyway estopped by its previous pronouncements on these questions. This court, however, knows of nothing and indeed nothing has been pointed out to it, regarding any change in the Louisiana law since the time these observations were made, which can explain this change of

**11.** Id.

position. Nor can this change of heart be entirely or satisfactorily explained by the change of law resulting from the *Hatfield* decision which is itself now several years old. Further, the puzzlement becomes all the more acute when, as we shall soon discover, it is realized that the Department's previous view is not dependant for its validity upon the older case law relative to a "bankruptcy exemption" now discarded by *Hatfield* but is instead completely explanable in terms of Louisiana law alone. That said however, the Department's present position on this issue has been conveniently summarized by it in brief as follows:

> Conducting auctions is a *business* and if the auctioneer in the bankruptcy situation is unable to carry out these responsibilities, then maybe he should not have been hired in the first place. (Emphasis Added)

In other words, and again without explanation, by changing the focus from whether the seller is in the *business of selling the items* being auctioned, *to* a declaration that the whole process of *"auctioning is the business* for the purposes of *Sections 301(1)* and *(10),* the department attempts to effect a complete reversal of its own previous position. Whether or not this reversal may be justified in terms of the statutory language requires a closer examination of the applicable Louisiana law.

First, it must be noted that a definition of "auction sale", or for that matter, even an attempt to equate that term to a taxable "retail sales or sales at retail," is not to be found among the various provisions of the sales tax law, *LSA 47:301* et seq.[12] Although it is true, as the Department has pointed out, that the act now classifies or equates the word "auctioneer" with the word "dealer", thus making the auctioneer responsible for collecting and remitting the tax, this it seems assumes that what is being auctioned is itself taxable. To clari-

fy, it does not appear that the Department is arguing, and I certainly would not agree had it so argued, that an auctioneer conducting a sale of otherwise exempted items (i.e. for whatever reason exempted) is nevertheless required to collect and remit tax on such a sale by mere virtue of the fact that it is now an auctioneer conducting the sale via an auction.

The proper question therefore is, "is this a taxable sale?" And not "did an auctioneer conduct it?"

As to the treatment given the term "auction" under the Louisiana law, as stated previously, the answer is not to be found in the sales tax provisions but instead one must turn for an answer to that fountainhead of all Louisiana law—the Louisiana Civil Code.

### Auction under the Civil Code

The Civil Code provisions regarding "auctions" are rather straightforward. As is customary in Louisiana codal exposition, the Code starts by giving us a general definition of the term auction and then goes on in succeeding articles to ellaborate the specific characteristics and consequences of that concept. LSA *C.C. 2601* et seq.[13] *Article 2602* informs us that auctions are of *two types, voluntary* and *forced.*[14] The auction is said to be "forced" when this mode of sale is prescribed by law. When this article is read together with the following article, *Article 2603,* and *Article 2616* which deals with judicial sales, it becomes apparent that "prescribed by law" can have no other meaning than that of a judicial sale, i.e. judicial sales are "sales which are made by the authority of law", *LSA C.C. 2616.*[15] Regarding judicial sales, *Article 2616* tells us that they are also of two types: One, seizures,

> "Those which take place when the property of a debtor has been seized by order

12. See: Appendix.

13. Id.

14. Id.

15. Id.; this also is consistent with the long held view of a bankruptcy liquidation sale as a judicial sale. See 4 *Collier* (supra).

of a court, to be sold for the purpose of paying the creditor"

and two, to facilitate a succession or partition.[16] The Civil Code Ancillaries Article L.S.A. R.S. 9:3001 regulates the persons who are authorized to conduct judicial sales.[17] Generally it states that such sales are to be conducted by the sheriff or an "auctioneer"; or in the case of successions, interdictions and the like, by a legal representative. Concerning seizure sales Civil Code *Article 2618* further restricts the field to sheriffs and "other officers" and L.S.A. *R.S. 13:4350* now states they are to be conducted by the sheriff of the parish where the sale is held "unless otherwise provided". The distillation of these various provisions it would seem, indicates that sales such as the one now being considered must be conducted by the sheriff or where "otherwise provided" by an "auctioneer".

Regarding who may qualify as an "auctioneer", Louisiana law treats auctioneers as sort of quasi-public officials. Accordingly the state has for some time now required that auctioneers be licensed, L.S.A. *R.S. 5:1; R.S. 37:3101* et seq.[18] Traditionally excepted from this license requirement however, have been "any civil officer acting under the authority of any court of the United States or the State of Louisiana" *L.S.A. R.S. 5:2.*[19] Therefore, like the sheriff acting under the authority of the state court, a trustee acting under the authority of this court is exempt from the license requirement. Admittedly, that fact taken in isolation does not give any clear indication of a legislative intent to also relieve the trustee of the duty to collect sales tax, but what it does indicate is a recognition on the part of the Louisiana Legislature of the similar roles and functions played by the sheriff at a seizure sale on the one hand and the trustee at a liquidation sale on the other. It is also evidence of a legislative policy choice to refrain from unnecessary interference with the judicial process, state or federal.

When these factors are coupled with the codal distinction between "forced" and "voluntary" auctions and the special treatment afforded judicial sales in general and seizure sales in particular, there is evidence of a further legislative decision to treat all judicial sales alike, be they conducted by the trustee under U.S. bankruptcy law or the sheriff under state law. It is a recognition of the factual reality that these two types of "forced sales" are both tools of the judicial function and are both grounded upon the principal that the property of the debtor is the pledge of any remains available for the satisfaction of his creditors.

Now returning to the sales tax provisions and specifically the "isolated sales" exclusion, I cannot understand, given the factual similarity between the two and the legislative recognition of that similarity, how the Department can in earnest maintain that a sheriff's sale is not a "business" and yet a trustee liquidation sale is "a business" for the purpose of applying R.S. *47:301(10)*. To do so is not only contrary to the Department's own previous interpretation as well as the other Louisiana authorities discussed earlier but also defies all reason or explanation. The Department cannot and will not be allowed to simply say that the words mean whatever they say they mean; and whenever they say they mean it; and to whomever they say the words then apply.

■ Accordingly, I find that the trustee or an auctioneer conducting a sale on his behalf, pursuant to the authority of this court, is not "engaging in a business" or "holding himself out to be in a business" within the meaning and intent of L.S.A. *R.S. 17:301(1),(10)*. I further find that as a consequence thereof a trustee's liquidation sale does not constitute a taxable event and is instead a non-taxable "isolated sale" according to the provisions of the Louisiana sales tax law, L.S.A. *R.S. 47:301* et seq.

16. See: Appendix.

17. Id.

18. See Note 5 (supra)

19. Id.

## II.

*Federal/Constitutional Concerns*

As stated earlier, the *Hatfield* case held that the Georgia sales tax did not constitute an unconstitutional burden of taxation upon the bankruptcy process largely because the incidence of taxation falls upon the purchaser and not upon the estate. In this respect the *Hatfield* holding is applicable and controlling with regard to the Louisiana provisions, which like the Georgia law also places the primary liability for payment of the tax upon the purchaser. However, as the trustee points out, the "burden of taxation" question notwithstanding, the increased time and effort involved in: accounting, collecting, balancing funds, segregating funds and the like that will be required if he or his auctioneer is required to collect the tax presents a great administrative burden and is in and of its self an interference with the liquidation process.

*Hatfield* did not really deal with this problem of "administrative burden" but instead focused almost exclusively upon the issue of "burden of taxation", nor does there in fact appear to be any Fifth Circuit authority available for the resolution of this issue. Accordingly, both the trustee and, in response the Department, have relied on cases from other jurisdictions in support of their respective positions on the "administrative burden" question. Before turning to these however, the Department has on the instant facts raised some serious assertions and questions which I feel are entitled to a direct response. For this purpose there follows a quote directly from the Department's brief and then comments thereon:

> The trustee contends that the auctioneer is burdened by having to file sales tax returns, make change, keep records, segregate funds, make calculations ... It is interesting to note, however, that these are some of the same responsibilities that are required by the auctioneer for non-bankruptcy auctions.
>
> .   .   .   .   .
>
> There is no more administrative burden on the auctioneer at a liquidation sale of a bankruptcy estate than on a normal public auction.
>
> .   .   .   .   .
>
> The Department of Revenue submits that the burden, if any, is inconsequential. The actual collection is the responsibility of the auctioneer, who routinely handles such matters.
>
> .   .   .   .   .
>
> conducting auctions is a business and if the auctioneer in the bankruptcy situation is unable to carry out these responsibilities then maybe he should not have been hired in the first place.
>
> .   .   .   .   .
>
> surely, the auctioneers have [not] reduced their fees because these so-called "burdensome" things have not been done in the past.

By now the flaw(s) contained in the above argument(s) is, I am sure, quite apparent; it tends to put the cart before the horse. It is only the usual *licensed* auctioneer who would "routinely" handle such matters. Louisiana law specifically exempts the trustee from employing such a person. The declaration that the liquidation process is a "business" merely begs the question and substitutes conclusion for reason. To suggest, as the argument does, that the problem will somehow evanesce by requiring the trustee to employ an auctioneer possessed of these qualities, despite the dispensation he is accorded under state law, is not only circular reasoning but simply replaces one burden with yet another. The plain fact of the matter is that the liquidation sale is not a "normal public auction sale" either by function or form under the Louisiana law. Trustees can, and have on occasion, acted as their own auctioneers. There is therefore, contrary to the Department's assertion, no reason at all to believe that the steps required in the tax collecting process will be "routine" to the person conducting such a sale. Perhaps the most disturbing notion of all in the Department's argument is contained in

the last assertion relative to the effect or lack thereof that the increased duties will have on the fees paid to the auctioneer. In an almost cavalier manner the Department states tauntingly, "surely the auctioneers have [not] reduced their fees because these things ... have not been done in the past." There is, in fact, every reason to believe that quite the opposite is true. As the Department must know, having objected to the auctioneer's fees in this very case, an auctioneer employed by the trustee in bankruptcy is not free to simply negotiate his own price at any level which the market will bear. Instead, such matters are left to the ultimate determination, approval and review of this court. In my experience this normally results in a fee significantly lower than that customarily obtained in the non-bankruptcy setting. In reviewing such fee applications one of the primary factors that must be considered by the court is the amount of time, effort and work the applicant was required to expend in accomplishing his assigned task. If, as a result of the requirement to collect tax, the auctioneer is required to perform more work than he has had to do in the past, I could not in good conscience deprive him of a commensurate and added measure of compensation for his effort. In short, this is almost certain to result in extra expense to the estate and a lower distribution to its creditors.

Whether or not the burden or adverse consequences just described are sufficient to overcome the state's normally broad powers of taxation remains yet to be explored. However, they are at least worthy of note and can not be simply dismissed out of hand as the Department would have me do.

In support of his contentions regarding a possible impermissable administrative burden on the liquidation process, the trustee has relied chiefly upon the comments and findings of the Wyoming Bankruptcy Court in the case of In re: *Sunrise Construction Company, Inc.,* 32 B.R. 257 (Bkrtcy Wyoming 1983). As the Department, however, has correctly pointed out, that case has since been reversed and its reasoning rejected on appeal to the district court. 39

B.R. 668 (D.C.1984). Neither of these decisions are, at any rate, controlling in this jurisdiction. Nevertheless, the court is aware of the recent trend in the jurisprudence toward a more favorable treatment of state taxing power in the area of dual sovereignty or intergovernmental immunity, *Graves v. New York ex rel O'Keefe,* 306 U.S. 466, 59 S.Ct. 595, 83 L.Ed. 927 (1939); *Washington v. United States,* 460 U.S. 536, 103 S.Ct. 1344, 1347, 75 L.Ed.2d 264 (1983). As justice Rehnquist speaking for the majority in *Washington* points out:

> In recent years this court has examined in some detail the history of the federal government's constitutional immunity from state taxation. *United States v. New Mexico, supra,* 455 U.S. [720] at 730–38, 102 S.Ct. [1373], at 1380–84 [71 L.Ed.2d 580 (1982)]; *United States v. County of Fresno,* 429 U.S. 452, 457–64, 97 S.Ct. 699, 702–05, 50 L.Ed.2d 683 (1977). There is no reason to repeat these discussions here; it suffices to restate our conclusions. In *New Mexico,* we explained that "immunity may not be conferred simply because the tax has an effect on the United States, or even because the Federal Government shoulders the entire economic burden of the levy.... Similarly, immunity cannot be conferred simply because the state tax falls on the earnings of a contractor providing services to the Government." 455 U.S., at 734, 102 S.Ct., at 1382. In *Fresno,* we stated the rule that, *"[s]o long as the tax is not directly laid on the Federal Government, it is valid if nondiscriminatory* ... Id., 429 U.S. at 460, 97 S.Ct., at 703.

*Washington* Id. (emphasis added); see also: Blackmun dissenting Id. at 1351; Anno § 2 *state sales tax federal immunity* 44 L.Ed.2d 721. Accordingly, in a situation such as the present one, where admittedly the tax itself is not imposed directly upon the federal government, it's property functions or instrumentalities, the trustee's burden is indeed great to show that the alleged administrative burden would outweigh the state taxing power, provided

that is, that the tax meets the other extremely important prong of the test just stated—i.e. that it is "nondiscriminatory", *Washington* id. Further, in determining whether or not the tax discriminates impermissably against the federal government, the cloak of immunity is said to extend not only to the government directly but also to all with whom it deals, *Phillips Chemical v. Dumas Ind. Sch. Dist.,* 361 U.S. 376, 80 S.Ct. 474, 4 L.Ed.2d 384 (1960); *Moses Lake Homes, Inc. v. Grant County,* 365 U.S. 744, 81 S.Ct. 870, 6 L.Ed.2d 66 (1961); *Memphis Bank & Trust Co. v. Garner Shelby County Trustee, et al.,* 459 U.S. 392, 103 S.Ct. 692, 74 L.Ed.2d 562 (1983) [reitterating and upholding entire line]. Nor does the traditional and easily met "rational basis" test of discrimination, normally applicable in economic discrimination cases, suffice to shield such a tax or tax treatment from attack where a federal interest is involved. As Chief Justice Warren speaking for the court in *Phillips* aptly summed:

> It is true that perfection is by no means required under the equal protection test of permissible classification. But we have made it clear, in the equal protection cases, that our decisions in that field are not necessarily controlling where problems of intergovernmental tax immunity are involved.

> .   .   .   .   .

> [W]here taxation of the private use of the government's property is concerned, the government's interests must be weighed in the balance. *Accordingly, it does not seem too much to require that the State treat those who deal with the Government as well as it treats those with whom it deals itself.*
> *Phillips* at 80 S.Ct. 480.

Despite the liberalizing trend toward state taxation which has taken place since the doctrine outlined in *Phillips* was first announced, the court has never waivered in its adherence to the *Phillip's* line of cases.

**20.** Although *Washington* (supra) reaches a different result it clearly indicates that the court is

*Washington* (supra) *Memphis Bank* (supra).[20] Nor is the analysis confined to matters involving only the real property owned by the government. See e.g. *Miller v. Milwaukee,* 272 U.S. 713, 47 S.Ct. 280, 71 L.Ed. 487 (1927) (government bonds); *Memphis Bank* (supra) (interest on govt. obligations). Accordingly, wherever such disparate treatment is found, the state must meet a very heavy burden of justification in order to prevail on the question.

▮▮▮▮ Regarding the question as to whether an impermissible form of discrimination has occurred, the *Phillips* case tells us:

> ▮▮ A determination that Article 5248 is invalid, under this test, cannot merely on an examination of that article. It does not operate in a vacuum. First, it is necessary to determine how other taxpayers similarly situated are treated. Such a determination requires "an examination of the whole tax structure of the state".
> *Phillips* id. out of 80 S.Ct. at 479.

In applying this test to the instant fact I shall take specific judicial notice of a fact earlier discussed i.e., Louisiana does not impose a sales tax on sheriff's seizure sales because they fall into the category of an "isolated sale" within the meaning of L.S.A. *R.S. 47:301(10).* Fed.R.Evid. 201; *Railroad Tel. Cos. v. Board,* 85 Fed. 302 (C.C.M.D. Ten 1897); *Neal v. United States,* 402 F.Supp. 678 (D.N.J.1975); *Blacks United for Lasting Leadership, Inc. v. City of Shreveport, La.,* 71 F.R.D. 623 (1976); *In re Jacoby-Bender Inc.,* 40 B.R. 10 (Bkrtcy.E.D.N.Y.1984). Accordingly, and once again calling upon the findings and conclusions reached in Part I, I find that the trustee conducting a liquidation sale and a sheriff conducting a seizure sale, as well as the participants to the respective sales, are "parties similarly situated", both as afactual matter and by the clear effect of the Louisiana law when viewed as a whole. Therefore, even for the moment

not departing from *Phillips* and its progeny.

ignoring the fact that the same result would also be reached by the application of Louisiana law alone as was previously discussed, the result to be reached under *Phillips* and its progeny is unmistakable. Specifically, I find that the Louisiana Department of Revenue may not constitutionally impose a sales tax upon a liquidation sale conducted under the auspice of a trustee in bankruptcy and at the same time apply a different and more favorable treatment to persons similarly situated at a sheriff's seizure sale. The state has not only failed in its effort to justify such disparate treatment but has, with almost impetuous abandon, never even attempted to supply a reason.

Accordingly, and for all the reasons previously stated, my judgment shall be in favor of the trustee; declaring that Louisiana State sales tax is not applicable to a trustee liquidation sale or an auction sale conducted in conjunction therewith taking place under the auspice of this court.

A separate judgment in accordance with the foregoing shall be signed and duly entered upon submission by the trustee.

### APPENDIX

### [INDEX TO TITLE 47 SALES TAX PROVISIONS]

### CHAPTER 2. SALES TAX

Sec.
301. Definitions.
302. Imposition of tax.
303. Collection.
304. Treatment of tax by dealer.
305. Exclusions and exemptions from the tax.
305.1 Exclusions and exemptions; ships and ships' supplies.
305.3 Exclusions and exemptions; seeds used in planting of crops.
305.4 Exclusions and exemptions; casing, drill pipe and tubing used in offshore drilling.
305.5 Exclusions and exemptions; materials and supplies used in the construction of the Toledo Bend Dam Project.
305.6 Exclusions and exemptions; Little Theater tickets.
305.7 Exclusions and exemptions; tickets to musical performances of non-profit musical organizations.
305.8 Exclusions and exemptions; pesticides used for agricultural purposes.
305.9 Exclusions and exemptions; motion picture film rental.
305.10 Exclusions and exemptions; property purchased for use outside the state.
306. Returns and payment of tax; penalty for absorption of tax.
306.1 Collection from interstate and foreign transportation dealers.
307. Collector's authority to determine the tax in certain cases.
308. Termination or transfer of business.
309. Dealers required to keep records.
310. Wholesalers and jobbers required to keep records.
311. Collector's authority to examine records of transportation companies.
312. Failure to pay tax on imported tangible personal property; grounds for attachment.
313. System of import permits; seizure and forfeiture of vehicles used in importing without permit.
314. Failure to pay tax; rule to cease business.
315. Sales returned to dealer; credit or refund of tax.
316. Collector to provide forms.
317. Cost of collection.
318. Disposition of collections.

LSA R.S. 47:301

### Definitions

As used in this Chapter, the following words, terms and phrases have the meaning ascribed to them in this Section, except when the context clearly indicates a different meaning.

(1) "Business" includes any activity engaged in by any person or caused to be engaged in by him with the object of gain, benefit, or advantage, either direct or indirect. The term "business" shall not be

construed to include the occasional and isolated sales by a person who does not hold himself out as engaged in business.

(4) "Dealer" includes every person who manufactures or produces tangible personal property for sale at retail, for use, or consumption, or distribution or for storage to be used or consumed in this state.

"Dealer" is further defined to mean:

(a) every person, who imports, or causes to be imported, tangible personal property from any state or foreign country for sale at retail, for use, or consumption, or distribution, or for storage to be used or consumed in this state;

(b) every person who sells at retail, or who offers for sale at retail, or who has in his possession for sale at retail, or for use, or consumption, or distribution, or storage to be used or consumed in this state, tangible personal property as defined herein;

. . . .

(10) "Retail sale", or "sale at retail", means a sale to a consumer or to any person for any purpose other than for resale in the form of tangible personal property, and shall mean and include all such transactions as the collector, upon investigation, finds to be in lieu of sales; provided that sales for resale must be made in strict compliance with the rules and regulations. Any dealer making a sale for resale, which is not in strict compliance with the rules and regulations, shall himself be liable for and pay the tax.

The term "sale at retail" does not include sales of materials for further processing into articles of tangible personal property for sale at retail, nor does it include an isolated or occasional sale of tangible personal property by a person not engaged in such business.

R.S. 47:302

### Imposition of Tax

A. There is hereby levied a tax upon the sale at retail, the use, the consumption, the distribution, and the storage for use or consumption in this state, of each item or article of tangible personal property, as defined herein, the levy of said tax to be as follows:

(1) At the rate of two per centum (2%) of the gross proceeds derived from the lease or rental of tangible personal property, as defined herein, where the lease or rental of such property is an established business, or the same is incidental or germane to the said business.

(2) At the rate of two per centum (2%) of the monthly lease or rental price paid by lessee or rentee, or contracted or agreed to be paid by lessee or rentee to the owner of the tangible personal property.

C. There is hereby levied a tax upon all sales of services, as herein defined, in this State, at the rate of two percentum (2%) of the amounts paid or charged for such services.

The tax levied in this Section shall be collected from the dealer, as defined herein, shall be paid at the time and in the manner hereinafter provided, and shall be, in addition to all other taxes, whether levied in the form of excise, license, or privilege taxes, and shall be in addition to taxes levied under the provisions of Chapter 3 of Subtitle II of this Title.

D. Repealed by Acts 1982, No. 415, § 3.

E. No exemption from the state sales and use tax granted after the effective date of this Act and granted pursuant to the provisions of this Chapter or Chapter 2–A of Title 47 of the Louisiana Revised Statutes of 1950 shall be applicable to any sales and use tax levied by any local governmental subdivision or school board unless the state exemption specifically provides that it applies to such sales and use tax levies. In the absence of any such specific application of the state exemption to sales and use tax levies of any local governmental subdivision or school board, any state exemption granted pursuant to the provisions of this Chapter or Chapter 2–A of Title 47 of the Louisiana Revised Statutes of 1950 shall be applicable only to the levy and collection of the state sales and use tax.

R.S. 47:303

## Collection

A.  Collection from dealer.  The tax imposed under *R.S. 47:302* shall be collectable from all persons, as hereinafter defined, engaged as dealers as hereinafter defined.

. . . .

C.  Auctioneers.  All auctioneers shall register as dealers and shall display their registration to the public as a condition of doing business in this state.  Such auctioneers or the company which they represent shall be responsible for the collection of all local and state taxes on articles sold by them and shall report and remit to the collector as provided in this Chapter.  Added by Acts 1970, No. 656 § 1.

R.S. 47:304

A.  Treatment of tax by dealer

The tax levied in this Chapter shall be collected by the dealer from the purchaser or consumer, except as provided for the collection of the tax on motor vehicles in R.S. 47:303.  The dealer shall collect the sales taxes on off-road vehicles and remit them directly to the Department of Revenue and Taxation.  The dealer shall furnish the purchaser with a notarized bill of sale or other comparable document showing the amount of sales taxes paid at the time the vehicle is purchased.

. . . .

C.  Dealers shall, as far as practicable, add the amount of the tax imposed under this chapter in conformity with the schedule or schedules to be prescribed by the collector pursuant to authority conferred herein, to the sale price or charge, which shall be a debt from the purchaser or consumer to the dealer, until paid, and shall be recoverable at law in the same manner as other debts.  Any dealer who neglects, fails or refuses to collect the tax herein provided, shall be liable for and pay the tax himself.

. . . .

E.  Any dealer who fails, neglects, or refuses to collect the tax herein provided, either by himself or through his agents or employees, shall, in addition to the penalty of being liable for and paying the tax himself, be fined not more than one hundred dollars, or imprisoned for not more than three months, or both.

F.  No dealer shall advertise or hold out to the public, in any manner, directly or indirectly, that he will absorb all or part of the tax or that he will relieve the purchaser from the payment of all or any part of the tax.  Whoever violates this provision with respect to advertising shall be fined not less than twenty-five dollars nor more than two hundred fifty dollars, or imprisoned for not more than three months, or both.  For a second or subsequent offense, the penalty shall be double.

## LOUISIANA CIVIL CODE ARTICLES:

Chapter 9—Of Sales by Auction, or Public Sales

Art.

2601.  Sale by auction, definition.
2602.  Voluntary or forced sale.
2603.  Auction sale by officers of justice.
2604.  General rules governing sales by auction.
2605.  Sale through public officer.
2606.  Announcement of conditions of sale and demand for bids.
2607.  Adjudication to highest bidder.
2608.  Adjudication as completion of sale.
2609.  Payment of price before delivery.
2610.  Sale of immovable, retention of price until execution of act.
2611.  Resale for non-compliance with bid; adjudicatee's liability for deficiency.
2612.  Resale, bid by first adjudicatee prohibited.
2613.  Rejection of endorser of purchase price notes, effect on adjudication.
2614.  Liability of seller refusing to accept solvent endorser.
2615.  Liability for unauthorized bidding in name of another.

Art. 2601.  Sale by auction, definition

Art. 2601.  The sale by auction is that which takes place when the thing is offered

publicly to be sold to whoever will give the highest price.

Art. 2602. Voluntary or forced sale

Art. 2602. This sale is either voluntary or forced: voluntary when the owner himself offers his property for sale in this manner; forced, when the law prescribes this mode of sale for certain property, such as that of minors.

Art. 2603. Auction sale by officers of justice

Art. 2603. The sale by auction, as it is made by officers of justice, is treated of separately, under the chapter on judicial sales.

Art. 2604. General rules governing sales by auction

Art. 2604. The sale by auction, whether made at the will of the seller, or by direction of the law, is subjected to the rules hereafter mentioned.

Art. 2605. Sale through public officer

Art. 2605. It can not be made directly by the seller himself, but must be made through the ministry of a public officer, appointed for that purpose.

Art. 2616. Kinds of judicial sales

Art. 2616. Sales which are made by authority of law are of two kinds:

1. Those which take place when the property of a debtor has been seized by order of a court, to be sold for the purpose of paying the creditor.

2. Those which are ordered in matters of succession or partition.

Art. 2617. General rules for judicial sales

Art. 2617. Judicial sales are subject to the rules laid down above for public sales in general, in all such things as are not contrary to the formalities expressly prescribed for such sales, and with the modifications contained hereafter.

Art. 2618. Execution sale, persons authorized to make

Art. 2618. The sale on seizure is made at public auction by the sheriff or other officer charged with the execution of the judgment.

Persons authorized to make judicial sales

Judicial sales may be made by the sheriff, by an auctioneer of the parish or city in which the sale is to be made, or by the legal representative of the succession, minor, interdict, or insolvent property owner. In cases where the sale is not to be made by the legal representative, the judge ordering the sale shall direct that it be made by an auctioneer who has been agreed upon by the parties, or if the parties do not agree, by the sheriff or an auctioneer designated by the judge.

R.S. 5:1

Auction sales prohibited without license; exceptions

No person, firm or corporation, or combination thereof, shall sell, dispose of or offer for sale at public auction, or cause or permit to be sold, disposed of or offered for sale at any public auction any property of whatsoever nature unless said auction sale is licensed by the state auditor and is conducted by a duly licensed auctioneer.

No license from the state auditor shall be necessary for any judicial sale by public auction conducted pursuant to any order or judgment of any court of the United States or the State of Louisiana, nor to any auction sale of used or second hand property, nor to any sale by auction of real estate, nor any auction of cattle and livestock.

Acts 1956, No. 410, § 2.

(As amended 1983)

R.S. 5:1

Auction sales prohibited without license; exceptions

A. No person, firm, corporation, or combination thereof shall sell, dispose of, or offer for sale at public auction or cause or permit to be sold, disposed of, or offered for sale at any public auction any property of whatsoever nature unless said auction is conducted by a duly licensed auctioneer or otherwise in accordance with Chapter 2 of this Title or Chapter 42 of Title 37 of the

Louisiana Revised Statutes of 1950. This Chapter shall apply to all individuals owning or conducting auctions unless specifically exempt.

Notwithstanding any provision of law to the contrary, a nonlicensed person may dispose of, or offer for sale or cause or permit to be sold, disposed of, or offered for any public auction any property of whatsoever nature, provided that the auction is conducted by a person, firm or corporation, or combination thereof, that is duly licensed as auctioneer or otherwise in accordance with Chapter 2 of this Title or Chapter 42 of Title 37 of the Louisiana Revised Statutes of 1950.

Acts 1983, No. 508, § 1. Amended by Acts 1984, No. 780, § 1.

R.S. 5:2

Persons who may act as auctioneer

A. Any qualified voter may become an auctioneer and be authorized to sell any property at public auction upon giving bond with security as required by R.S. 5:3 and taking the oath prescribed by law; however, any civil officer acting under the authority of any court of the United States or the state of Louisiana may sell any property at public auction without the necessity of securing an auctioneer's license.

B. Nothing in this Chapter shall be construed to exempt any person from the provisions of Chapter 17 of Title 37 of the Louisiana Revised Statutes of 1950. Acts 1983, No. 508, § 1.

R.S. 37:3101

Declaration of purpose

A. The legislature of Louisiana declares that requiring the licensure of qualified auctioneers is in the best interest of the citizens of this state.

B. The purpose of this Chapter is to require qualifying criteria in a presently unregulated occupational field in which unqualified, irresponsible, or unscrupulous individuals may injure the public. The requirements of this Chapter shall contribute to the safety, health, and property of the people of Louisiana in the transfer of property by auction.

Added by Acts 1983, No. 508, § 5.

R.S. 37:3104

Exclusions

The provisions of this Chapter shall not apply to the following:

(1) A sale conducted by order of any United States Court pursuant to Title 11 of the United States Code relating to bankruptcy.

(2) A sale conducted by an employee of the United States or the state of Louisiana or its political subdivisions in the course and scope of his employment.

(3) A sale conducted by a charitable or nonprofit organization.

(4) A sale conducted by an individual of his own property if such individual is not engaged in the business of selling such property as an auctioneer on a regular basis.

(5) A foreclosure sale of realty conducted personally by a trustee under a recorded deed of trust.

(6) A foreclosure sale of personal property conducted personally by the mortgagee or other secured party or an employee of such mortgagee or other secured party acting in the course and scope of his employment under a recorded chattel mortgage or other security or agreement.

(7) A sale conducted by sealed bid.

Added by Acts 1983, No. 508, § 5.

R.S. 37:3122

Cease and desist order; injunctive relief

A. In addition to or in lieu of the criminal penalties and administrative sanctions provided in this Chapter the board is empowered to issue an order to any person or firm engaged in any activity, conduct, or practice constituting a violation of any provision of this Chapter directing such person or firm to cease and desist from such activity, conduct, or practice. Such order shall be issued in the name of the state of Louisiana under the official seal of the board.

B. Upon a proper showing by the board that such person or firm has engaged in any activity, conduct, or practice proscribed by this Chapter, the court shall issue a temporary restraining order restraining the person or firm from engaging in unlawful activity, conduct, or practices pending the hearing on a preliminary injunction, and in due course a permanent injunction shall issue after hearing commanding the cessation of the unlawful activity, conduct, or practices complained of, all without the necessity of the board having to give bond as usually required in such cases. A temporary restraining order, preliminary injunction, or permanent injunction issued hereunder shall not be subject to being released upon bond.

C. If the person or firm to whom the board directs a cease and desist order does not cease and desist the proscribed activity, conduct, or practice within ten days from service of such cease and desist order by certified mail the board may cause to issue in any court of competent jurisdiction and proper venue a writ of injunction enjoining such person or firm from engaging in any activity, conduct, or practice proscribed by this Chapter.

Added by Acts 1983, No. 508, § 5.

R.S. 37:3123

Violations; penalties

A. Any person who engages in auctions without a valid license violates this Chapter.

B. Any person who willfully violates any provisions of this Chapter or any rules and regulations adopted under its authority shall be fined for each offense not more than five hundred dollars or imprisoned not more than six months, or both.

Added by Acts 1983, No. 508, § 5.