**In re WARMINGS A.G. FOOD CENTER.**

**Dennis G. BEZANSON, Trustee in Bankruptcy, Appellee-Cross Appellant,**

v.

**STATE of Maine, BUREAU OF TAXATION, Appellant-Cross Appellee.**

**Civ. No. 84–0357 P.**

United States District Court, D. Maine.

June 26, 1985.

---

Dennis G. Bezanson, South Portland, Me., trustee.

Polly Haight Frawley, Asst. Atty. Gen., Augusta, Me., for appellant-cross appellee.

Richard Keenan, d/b/a Keenan Auction Co., Kingfield, Me.

## OPINION AND ORDER

GENE CARTER, District Judge.

### I.

This case is on appeal from the bankruptcy court. Warmings A.G. Food Center, Inc. is the Debtor in a Chapter 7 proceeding filed in the bankruptcy court. The Trustee filed a Notice of Intended Sale of the personal property of the Debtor pursuant to 11 U.S.C. § 363(b) and (f) (1984). The liquidation sale was conducted by Keenan Auction Co. After the sale, the Appellant, State of Maine Bureau of Taxation, demanded that the auctioneer pay five percent (5%) State of Maine sales tax on all items sold at the auction. The Trustee filed a complaint seeking declaratory and injunctive relief to prevent the State from collecting the sales tax. The parties filed cross-motions for summary judgment. In an order dated September 20, 1984, the bankruptcy court ruled that the State may not collect sales tax on a court-ordered liquidation sale conducted by an auctioneer, but denied the Trustee's prayer for an injunction. The State appealed, and the Trustee cross-appealed from the bankruptcy court's order denying injunctive relief.[1]

---

1. Neither party requested oral argument. After examining the briefs and the record in this case, the Court determined that oral argument was unnecessary because the facts and legal arguments are adequately presented therein and the decisional process would not be aided by oral argument. *See* Fed.R.Bankr.P. 8012.

Section 1811, Title 36, Maine Revised Statutes Annotated imposes a tax at the rate of 5% on the value of all tangible personal property sold at retail in Maine. The tax is levied on the consumer. 36 M.R.S.A. § 1753. The retailer, however, is required to add the tax to the sale price, 36 M.R.S.A. § 1812, collect it and pay it to the state. 36 M.R.S.A. § 1951. A "retail sale" is defined as "any sale of tangible personal property, in the ordinary course of business," but does not include "casual sales." 36 M.R.S.A. § 1752(11). The term "casual sale" is defined to exclude sales conducted "by a representative for the owner's account when such representative is a registered retailer...." *Id.* The parties agree that the auctioneer who conducted the liquidation sale in this case is a registered retailer who is required by Maine statutes to collect the sales tax. *See Catlin v. State of Maine, Bureau of Taxation,* 28 B.R. 568, 570 (Bankr.D.Me.1983).

▪ The Trustee contends that imposition of the state sales tax on a court-ordered bankruptcy liquidation sale impermissibly burdens the administration of the federal bankruptcy law. Article 1, § 8, cl. 4 of the United States Constitution authorizes Congress to establish uniform laws on the subject of bankruptcies. State laws that interfere with the execution of Congressional acts passed pursuant to the Constitution are invalid. *McCulloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 326–27, 4 L.Ed. 579 (1819). The Bankruptcy Code requires a trustee in Chapter 7 proceedings to reduce "to money the property of the estate for which such trustee serves, and to close such estate as expeditiously as is compatible with the best interests of parties in interest." 11 U.S.C. § 704(1) (1984). The Code authorizes the trustee to sell the property of the estate and to employ professional persons, including auctioneers, to liquidate the property. 11 U.S.C. §§ 363(b)(1), 327(a) (1984).

In this case, the Trustee argues that the state sales tax impinges upon these congressionally-authorized functions in two ways. First, it imposes an administrative burden of collecting, reporting, and turning over the tax upon the auctioneer employed by the Trustee to conduct the sale. Second, although the tax is paid by the buyer, it would assumedly reduce the price a buyer would be willing to pay, thereby reducing the receipts obtained by the estate and ultimately the amounts received by creditors.

The bankruptcy court in this case and in a prior published opinion held that the imposition of the sales tax impermissibly burdens the execution of the bankruptcy laws. *Catlin v. State of Maine, Bureau of Taxation,* 28 B.R. 568 (Bankr.D.Me.1983). Other courts have taken the same position. *See,* e.g., *California State Board of Equalization v. Goggin,* 245 F.2d 44 (9th Cir.1957) (*Goggin II*); *Babb v. Oklahoma,* 17 B.R. 789 (Bankr.W.D.Okl.1982). The Second and the Fifth Circuits have taken the opposite view. *Blackmon v. Nichols,* 494 F.2d 1179 (5th Cir.1974); *City of New York v. Jersawit,* 85 F.2d 25 (2d Cir.1936); *see also Ernst v. Iowa Department of Revenue,* 28 B.R. 858 (Bankr.N.D.Iowa 1983).

## II.

The initial question presented is whether the sales tax here imposed falls within the reach of 28 U.S.C. § 960, which provides:

Any officers and agents *conducting any business* under authority of a United States court shall be subject to all Federal, State and local taxes applicable to such business to the same extent as if it were conducted by an individual or corporation.

(Emphasis added.) The Trustee argues that the phrase, "conducting any business," refers to the ordinary conduct of business and excludes a liquidation sale. Under this view, 28 U.S.C. § 960 would not subject the Trustee or his agents conducting a liquidation sale to a state tax. *See Catlin, supra,* 28 B.R. at 570, n. 2; *Great American Bank of Broward County v. McCracken,* 750 F.2d 887 (11th Cir.1985) (excise tax levied on estate as *seller*); *California State Board of Equalization v. Goggin,* 191 F.2d 726, 730 (9th Cir.1951)

(*Goggin I*), *cert. denied*, 342 U.S. 909, 72 S.Ct. 302, 96 L.Ed. 680 (1952); *Babb, supra*, 17 B.R. at 790–92; *In re Samoset Associates*, 14 B.R. 408, 413–14 (Bankr.D. Me.1981).

Other courts have held that a liquidation sale is within the scope of 28 U.S.C. § 960. *Missouri v. Gleick*, 135 F.2d 134, 136–37 (8th Cir.1943) (interpreting the predecessor to 28 U.S.C. § 960);[2] *In re Mid America Co.*, 31 F.Supp. 601, 606 (S.D.Ill.1939) (same); *Ernst, supra*, 28 B.R. at 868–69.

The Supreme Court has observed that the stated congressional purpose of the predecessor to 28 U.S.C. § 960, *see supra*, note 2, was " 'to subject businesses conducted under receivership in Federal courts to State and local taxation the same as if such businesses were being conducted by private individuals or corporations.' " *Palmer v. Webster & Atlas National Bank*, 312 U.S. 156, 163, 61 S.Ct. 542, 545, 85 L.Ed. 642 (1941) (*quoting* H.R. 1138, 73d Cong., 2d Sess.; S.Rept. 1372, 73d Cong., 2d Sess.). The statute was intended to prevent a receiver from gaining an advantage over competitors not in receivership and to prevent state and local governments from being deprived of revenue. *Id.*

■ A business entity conducting a liquidation sale outside of bankruptcy clearly would be subject to the state sales tax provision. This Court has been presented with no reason why the congressional purpose to equalize state tax treatment, which underlies 28 U.S.C. § 960, should not extend to liquidation sales. The Trustee's argument is based solely upon an interpretation of the language of the statute, herein the phrase "conducting any business," which would limit its application to the operation, as distinguished from the liquidation, of a business. *See Catlin, supra*, 28 B.R. at 570, n. 2; *Samoset, supra*, 14 B.R. at 414.

■ This Court is persuaded that the broader construction of "conducting any business" set forth by the Eighth Circuit in *Missouri v. Gleick, supra,* is more consistent with the clear purposes of the statute:

> The phrase "conduct any business" should not receive a narrow and restricted interpretation, but should be construed to include any activity or operation in connection with the handling and management of the bankrupt estate. That this was the intention of Congress is clear from further language of this section ... which makes the trustee "subject to all state and local taxes applicable to such business ... as if such business were conducted by an individual or corporation." Obviously, if the bankrupts themselves liquidated their respective businesses they would each be liable for [unemployment compensation] contributions with respect to services performed for them in connection with such liquidation.

135 F.2d at 137. The purposes of equalized state tax treatment and facilitation of state revenue collection are advanced by application of 28 U.S.C. § 960 to liquidation sales. The Court finds no persuasive reason to exclude such sales from the operation of 28 U.S.C. § 960. Accordingly, the Court holds that 28 U.S.C. § 960 authorizes the imposition of the state sales tax on the liquidation sale in this case.

### III.

Congress' consent to state taxation of a liquidation sale in bankruptcy obviates the need to determine whether the state tax impermissibly burdens execution of the federal bankruptcy laws. Even if 28 U.S.C. § 960 is found not to reach such sales, however, the Court would find that imposition of the state tax is permissible.

---

**2.** The predecessor to 28 U.S.C. § 960, codified at 28 U.S.C. § 124a, provided in pertinent part: Any receiver, liquidator, referee, trustee, or other officers or agents appointed by any United States court who is authorized by said court to conduct any business, or who does conduct any business, shall, from and after June 18, 1934, be subject to all State and local taxes applicable to such business the same as if such business were conducted by an individual or corporation....

■ The leading case reaching a contrary result is *Goggin II, supra.* The Court summarized its reasoning in that case:

> Now the cardinal purpose of the acts relating to bankruptcies is to liquidate the property of the debtor in order to accomplish equitable distribution of his assets to his creditors. *Any act which hinders, delays or burdens the accomplishment of this vital purpose constitutes an unlawful interference with the process of the court of bankruptcy and is invalid.*

245 F.2d at 46 (emphasis added). *Goggin II* articulates an absolutist approach which tolerates no inquiry into the extent to which a cognizable congressional purpose is frustrated by the state law in question. This approach stands in stark contrast to that of the Supreme Court in *Swarts v. Hammer,* 194 U.S. 441, 24 S.Ct. 695, 48 L.Ed. 1060 (1904),[3] where the Court upheld a municipal tax on property of the estate which was to be paid by the Trustee. The Court explained:

> The question is not the extent of the power of Congress over the subject of bankruptcy, but what Congress intended by the act of 1898. By section seven of that act the title to all of the property of the bankruptcy not declared to be exempt is vested in the trustee. By the transfer to the trustee no mysterious or peculiar ownership or qualities are given to the property. It is dedicated, it is true, to the payment of the creditors of the bankrupt, but *there is nothing in that to withdraw it from the necessity of protection by the State and municipality, or which should exempt it from its obligations to either. If Congress has the power to declare otherwise and wished to do so the intention would be clearly expressed, not left to be collected or inferred from disputable consid-*

> *erations of convenience in administering the estate of the bankrupt.*

*Id.* at 444, 24 S.Ct. at 703 (emphasis added). The general rule of *Swarts* is that property of an estate in bankruptcy is subject to all state and local taxes absent a clearly expressed congressional intent to the contrary. Such an intent should not be "inferred from disputable considerations of convenience in the administration of the estate of the bankrupt." *Id.*

■ In this case, the most direct burden upon the Trustee is that the auctioneer employed by him must collect and remit the state sales tax. This burden is inconsequential. *See Blackmon, supra,* 494 F.2d at 1181.

■ An indirect burden might flow from the fact that the amount realized on the sale may be less than it would be if no tax were imposed. This merely puts the estate and the creditors in the same position as any other liquidating sellers outside of bankruptcy. *See City of New York, supra,* 85 F.2d at 27. The Court of Appeals for the Second Circuit reasoned:

> What the trustee is really complaining of is, not that a burden has been imposed upon the exercise of his functions, but of his inability to sell to a purchaser who would be exempt from a tax and because of such an exemption would pay a higher price to him than would ordinarily be paid for the goods sold. It seems unreasonable to treat the absence of an exemption from taxes as a burden upon the normal exercise of a governmental function.

*Id.* Any indirect economic burden incident to a nondiscriminatory state tax does not, in short, justify an exemption from the state tax. *See Graves v. New York, ex rel. O'Keefe,* 306 U.S. 466, 487, 59 S.Ct. 595, 601, 83 L.Ed. 927 (1939).

The order of the bankruptcy court is hereby VACATED and the case is RE-

---

3. *See also Graves v. N.Y., ex rel. O'Keefe,* 306 U.S. 466, 480, 59 S.Ct. 595, 598, 83 L.Ed. 927 (1939) ("when exemption from state taxation is claimed on the ground that the federal government is burdened by the tax, and Congress has disclosed no intention with respect to the claimed immunity, it is in order to consider the *nature and effect* of the alleged burden ...") (emphasis added).

MANDED with direction that judgment be entered in favor of the Appellant State of Maine, Bureau of Taxation.

So ORDERED.