### In re MISSOURI PRECISION CASTINGS, INC., Debtor.

**J. Kevin CHECKETT, Trustee, Plaintiff,**

**v.**

**Duane BENTON, Director, Missouri Department of Revenue, Defendant.**

**Bankruptcy No. 90–30310–SW–11.**
**Adv. No. 91–3016–SW–11.**

United States Bankruptcy Court,
W.D. Missouri.

May 31, 1991.

---

J. Kevin Checkett, pro se.

Shaun Baskett, Office of General Counsel, Jefferson City, Mo., for Defendant.

## ORDER GRANTING INJUNCTIVE RELIEF

ARTHUR B. FEDERMAN, Bankruptcy Judge.

The issue in this case is whether a person who purchases assets from a Bankruptcy Trustee can be held liable for sale, use, income, or withholding taxes owed by the debtor. I find that under the facts of this case, the purchaser is not so liable under Missouri law. Therefore, Defendant Missouri Department of Revenue should be enjoined from seeking to collect such taxes from the purchaser.

The facts are not in dispute. Pursuant to applicable rule, the Chapter 11 Trustee sent notice to all creditors that he intended to sell certain specified assets of the debtor to Ferromet Resources, Inc. for approximately $1,649,000.00, depending upon the precise assets transferred at closing. Such sale was to be free and clear of liens, with all valid liens to attach to sale proceeds. All creditors, including the Missouri Department of Revenue, received notice of such sale, and were given the opportunity to object. No objections were filed, so the Court entered an Order on April 24, 1991 authorizing the Trustee to proceed with the sale. However, prior to the sale being consummated, the Department indicated that it intended to hold the purchaser liable for tax obligations incurred by the debtor. The purchaser refused to proceed with the sale on that basis. Therefore, in order to preserve the assets of the estate, the Trustee filed this action to enjoin the state from attempting to impose successor liability on such purchaser.

With the agreement of the parties, this matter was taken up on an emergency basis on May 28, 1991 in Joplin, Missouri. The parties agreed that out of the sale proceeds secured creditors would be paid approximately $1,505,000.00, leaving approximately $140,000.00 available for distribution to other creditors. The Missouri Department of Revenue has a claim of approximately $51,000.00. In the event that the Trustee goes ahead with the sale and distributes the proceeds pursuant to the provisions of the Bankruptcy Code, the claim of the Department of Revenue would not be paid in full. For example, there are outstanding wage claims of approximately $150,000.00, and taxes due the Internal Revenue Service of approximately $35,000.00. (See, 11 U.S.C. § 507).

In the event the purchaser is subject to liability to the State for the debtors unpaid taxes, such purchaser will not proceed with the sale. Unless such sale is consummated, the Trustee will in short order have no available funds with which to operate the business, the result of which would be that the business would be closed, the employees laid off, and the assets abandoned to the secured creditor. If that happens, it appears that there will be no proceeds

available for payment to any other creditors, be they taxing authorities, employees, or otherwise.

The applicable statute is R.S.Mo. § 144.150, which provides in relevant part as follows:

Section 144.150. *Withholding of tax money in case of sale of business—director to send statements to certain persons, when—secured creditors, priority, exempt from tax liability*

. . . . .

2. If any person required to remit a tax levied hereunder or his successors shall contract to sell all or substantially all of his or their business, the seller shall request from the director of revenue a statement or certificate as provided in subsection 4 of this section. The seller shall present such statement or certificate to the purchaser prior to consummation of the sale and secure the purchaser's signature thereon as validation of receipt. Failure to comply with this provision shall result in the seller being liable for an additional penalty equal to twenty-five percent of the seller's delinquency at the time of the sale. The provisions of this section to the contrary notwithstanding, this additional penalty shall be the sole liability of the seller and shall not be a liability of the purchaser.

3. Except as provided in subsections 4, 5 and 6 of this section, all successors, if any, shall be required to withhold sufficient of the purchase money to cover the amount of such taxes and interest, additions to tax or penalties due and unpaid until such time as the former owner or predecessor, whether immediate or not, shall produce a receipt from the director of revenue showing that the taxes have been paid, or a certificate stating that no taxes are due. If the purchaser of a business or stock of goods shall fail to withhold the purchase money as above provided, the purchaser shall be personally liable for the payment of the taxes, interest, additions, to tax and penalties accrued and unpaid on account of the operation of the business by the former owner and person.

. . . . .

5. A secured creditor who shall enforce a lien against a business or a stock and goods of a business subject to the provisions of this chapter, shall be entitled to obtain from the director of revenue a statement of sales tax due and the status of the sales tax payments from the director of revenue in accordance with subsection 4 of this section. If the director of revenue does not respond within 15 days from the date of receipt of such request by the secured creditor seeking to enforce its lien, it shall be conclusively presumed that all such sales taxes have been paid as to the secured creditor or any successor of the secured creditor, whether such successor be immediate or not. Nothing in this section shall eliminate the liability of the owner of the business owing sales tax from the liability to pay such sales tax. Any purchaser who acquires the business or stock of goods as a result of an enforcement action by a creditor, including the creditor, shall be exempt from the liability set forth in subsection 3 of this section, whether such purchaser be immediate or subsequent thereto.

6. Any such creditor who shall enforce a lien against the business or stock of goods subject to the provisions of this section shall be entitled to be paid the principal sums due, all accrued interest to the date of payment, and the expenses of enforcing the lien of the secured creditor including its attorneys fees. The balance, if any, shall be paid to creditors having a priority interest thereto under the laws of the state of Missouri or the United States of America. Any balance remaining, up to the amount of the tax, interest, additions to tax and penalties then due, shall be remitted to the director of revenue as provided by this section. Nothing in this section shall affect the priority of any lien filed by the director of revenue against the former owner or predecessor.

. . . . .

Thus, the statute provides that prior to purchasing all or substantially all of the assets of a business, the purchaser is required to determine whether any applicable taxes are due, and to withhold sufficient of the purchase money to cover the amount of such taxes. However, if property is purchased pursuant to an enforcement action by a creditor holding a lien, the purchaser is not required to withhold such sums or be liable for the payment of the taxes.

The Trustee has requested and been furnished by the Director of Revenue with a statement of taxes due. In this lawsuit he requests that the Department be enjoined from taking any action to enforce successor liability as to either himself or the purchaser. He also asks that the Department be directed to transmit to him a tax clearance letter so providing.

· The Missouri Department of Revenue contends that the purchaser from a Bankruptcy Trustee should be personally liable for the debtor's unpaid taxes. This argument ignores § 544 of the Bankruptcy Code, which specifically provides that a Bankruptcy Trustee has the rights and powers of a lien creditor as to the assets of the debtor. Section 544 provides in relevant part as follows:

Section 544. *Trustee as lien creditor and as successor to certain creditors and purchasers.*

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

. . . . .

Since a bankruptcy trustee is a lien creditor who is enforcing his lien against the debtor's assets, a person who purchases from a bankruptcy trustee is entitled to the exemption from successor liability provided by the statute.

The Department of Revenue cites two cases, neither of which is contrary to the result reached here. In *California State Board of Equalization v. Sierra Summit, Inc.,* 490 U.S. 844, 109 S.Ct. 2228, 104 L.Ed.2d 910 (1989), the Supreme Court found that bankruptcy estates are subject to imposition of state sales or use taxes on liquidation sales. Of course, that is not the issue here. The Trustee does not contend that the estate should be exempt from applicable sales taxes, due under Missouri law, as a result of the Trustee's liquidation of these assets. The issue is whether the purchaser of such assets is liable for pre-existing obligations of the debtor under Missouri law.

The Director of Revenue also cites *Bates v. Director of Revenue,* 691 S.W.2d 273 (Mo. banc 1985). It should be noted that *Bates* was not a bankruptcy case, and the state court was not asked to consider whether a bankruptcy trustee is a lien creditor within the meaning of Missouri law. In any event, the result in *Bates* is consistent with the statute and this decision. There, a lien creditor held a foreclosure sale of a motel, the owners of which owed certain sales taxes. However, the foreclosure process was never completed, and a trustee's deed was never recorded because the purchase price was paid in escrow pending resolution of a dispute over attorneys fees and other matters. While that

dispute was pending, the obligor-owners and the lien creditor jointly conveyed any interest held by them to the same party who had purchased at the foreclosure sale. As a result, the deed which ended up being recorded in favor of that purchaser was not a trustee's deed resulting from a foreclosure sale, but was simply a private conveyance. The Missouri Supreme Court found that such conveyance did not constitute an enforcement action by a secured creditor. Therefore, the purchaser was held to be liable for the outstanding sales tax. Nothing in *Bates* is contrary to the result reached here.

The Department's position in this case, if adopted, would give the state a veto over sales by bankruptcy trustees. Unless a purchaser were willing to pay the state all or a portion of the debtor's tax liabilities, the state would have the power to chill the sale, thereby depriving all the debtor's creditors of the benefits of that sale. The state therefore seeks a priority higher than that accorded it by the Bankruptcy Code. The Missouri statute upon which the Department relies specifically promotes sales of assets by lien creditors by shielding purchasers from successor liability. Such statute provides that proceeds of enforcement actions by lien creditors should be distributed first to the holders of valid liens, and then to creditors having priority interest under the laws of Missouri or the United States. That is exactly what will happen in this bankruptcy case. The Trustee will pay the secured creditor the amount of its claim, and will then utilize the bankruptcy process to pay other creditors, including the Department of Revenue, their claims based on the priorities established by the Bankruptcy Code.

Based upon the above, judgment should be entered enjoining the Missouri Director of Revenue from taking any action against Ferromet Resources, Inc., or its successors, or the Trustee, to collect obligations due and owing by Missouri Precision Castings, Inc. Nothing in this Order shall prohibit the Department of Revenue from filing and litigating in this Court any claims it may have against the Missouri Precision Castings estate. In view of my ruling that the Trustee is a lien creditor, and that his sale is an enforcement action exempt from these requirements, the Trustee's further request that the Department be directed to transmit tax clearances to him should be denied.

IT IS SO ORDERED.