WILKINSON, Chief Judge,
concurring in part and concurring in the judgment:
I concur in sections I and II.A of the majority opinion. I also agree that 11 U.S.C. § 1146(c) does not apply to precon-firmation transfers. I do not agree,' however, that the section’s plain language compels this conclusion.
Section 1146(c) provides:
The issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under section 1129 of this title, may not be taxed under any law imposing a stamp tax or similar tax.
The majority holds that the phrase “under a plan confirmed under section 1129 of this title” plainly excludes transfers occurring prior to confirmation. The majority finds this plain meaning in the word “under,” which it defines as “ ‘inferior’ or ‘subordinate.’ ” See ante at 457 (quoting Black’s Law Dictionary 1525 (6th ed.1990)). Because, the majority concludes, “a transfer made prior to the date of plan confirmation could [not] be subordinate to ... something that did not exist at the date of transfer — a plan confirmed by the court,” the term “under” must limit section 1146(c)’s applicability to postconfirmation transfers. Id.
With respect, I disagree. It is not plain to me that section 1146(c) contains a temporal element. It is also not clear that one must read the section to say anything about the relationship between plan confirmation and the timing of a transfer. It is equally possible that the provision requires only that the transfer occur “under” — i.e., that it be inferior or subordinate to — “a plan” that is ultimately “confirmed.” In other words, the fact rather than the timing of plan confirmation is the critical issue. In a complicated reorganization a debtor-in-possession may operate for some time pursuant to the terms of an unconfirmed plan while it negotiates with its creditors. It is far from obvious that those transfers fall outside section 1146(c).*
*459 Moreover, reading the phrase to require only that the plan ultimately be confirmed would comport with a central purpose of our bankruptcy laws: “permitting business debtors to reorganize and restructure their debts in order to revive the debtors’ businesses and thereby preserve jobs and protect investors.” Toibb v. Radloff, 501 U.S. 157, 163, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991); see also Landmark Land Co. v. Resolution Trust Corp. (In re Landmark Land Co.), 973 F.2d 283, 288 (4th Cir.1992) (“[T]he purpose of Chapter 11 is reorganization. ...”). Applying section 1146(c) to transfers made during the preconfirmation period may provide substantial funds to the debtor. See, e.g., In re Lopez Dev., Inc., 154 B.R. 607 (Bankr.S.D.Fla.1993) (exempting preconfirmation transfers from $33,600 in stamp taxes). These funds would permit the debtor to emerge from bankruptcy and thereby to generate substantial long-term tax revenues. .
Nevertheless, the majority’s reading of section 1146(c) is a reasonable one. And when construing an alleged federal abrogation of state and local taxing authority a “court must proceed carefully.” California State Bd. of Equalization v. Sierra Summit, Inc., 490 U.S. 844, 851, 109 S.Ct. 2228, 104 L.Ed.2d 910 (1989) (internal quotation marks omitted). If Congress wished to exempt a bankrupt from state and municipal taxation, “the intention would be clearly expressed, not left to be collected or inferred from disputable considerations of convenience in administering the estate of the bankrupt.” Swarts v. Hammer, 194 U.S. 441, 444, 24 S.Ct. 695, 48 L.Ed: 1060 (1904). I therefore believe it proper to construe section 1146(c) to include only postconfirmation transfers, not because the section’s language is patent, but because concerns of federalism require the narrower interpretation.

 If Congress used the words "under a plan ultimately confirmed,” that would have made *459 the matter clear. Or if Congress used the words "under a confirmed plan,” that would have made its intentions obvious. Congress used neither phrasing — hence the ambiguity.